(No. 5741.   October 15, 1931.)

CHAS. E. SIMPSON, Respondent, v. TWIN FALLS
FEEDER COMPANY et al., Appellants.

[3 Pac. (2d) 1100.]

Walters, Parry & Thoman and J. R. Keenan, for Appellants.

J. H. Barnes, for Respondent.

LEE, C. J.—On March 2, 1920, one, Wolfgang, and wife, the owners of the S.½ of the SW.¼ of Sec. 23, T. 10 S., R. 17 E. B. M. in Twin Falls county, contracted to sell the whole thereof less some 4.1 acres to Kingsbury and Hicks. On May 11, 1923, Kingsbury and Hicks contracted to sell 23 acres of this portion to one, Jack France. On May 11, 1923, France and wife assigned their contract with Kingsbury and Hicks to the defendant, Twin Falls Feeder Company, an Idaho corporation: none of these contracts were put on record by the immediate parties. On December 29, 1925, Kingsbury and Hicks contracted to sell to Matt Schmidt all their interest in the original tract, subject to their contract with France for said 23 acres, which said contract they also by the same instrument assigned to Schmidt. Schmidt, therein agreed to pay off the original owner and vendor, Wolfgang. Schmidt paid Wolfgang, and in December, 1927, received from the latter and wife a warranty deed to the property subject to a prior $6,000 mortgage which Schmidt undertook and agreed to pay. The defendant Feeder Company, after having paid a substantial sum on the France contract for the 23 acres, defaulted in a $2,000 balance of the promised purchase price. Defendant

and appellant, Central Realty Company, an Idaho corpora-
tion, paid this sum to Schmidt. Schmidt thereafter, on
February 19, 1929, for a recited consideration of $6,000
deeded the property to said appellant. The conveyance was
expressly declared to be subject to the Kingsbury-Hicks-
France contract. This deed was recorded by the Realty
Company March 8, 1929.

Charles E. Simpson, plaintiff and respondent, a creditor
of defendant Feeder Company, having on March 22, 1930,
and April 17, 1930, respectively recovered judgments against
said defendant company, caused execution to be issued
thereon. In his returns, the sheriff stated that he had been
unable to find any property of the defendant within his
county. Thereafter, according to his brief, respondent
brought a suit in equity to have the deed set aside as in
fraud of this creditor,'' expressly referring to it as the
warranty deed from Matt Schmidt.'' Stripped by a motion
to strike, the complaint substantially alleged that one,
Jack France, had acquired ''an interest'' in the 80 acres
hereinbefore described, with the exception of two delimited,
small parcels; that defendant Feeder Company paid to
the said Jack France ''a large sum of money'' for ''his in-
terest'' in the property; that, prior to the recording of the
Matt Schmidt deed in March, 1929, nothing had been placed
of record to show the interest of the Feeder Company; that
defendant, Central Realty Company, some of whose direc-
tors were also directors of said Feeder Company, was
organized ''for the sole purpose of taking over and hold-
ing'' said property, ''thus preventing the enforcement of the
just debts of defendant, Twin Falls Feeder Company, being
made against said property; that said transaction was
designed and carried out for the purpose of hindering,
delaying and defrauding creditors of defendant, Twin Falls
Feeder Company, in collecting their just debts and liens
against the property of said corporation; that there is no
other property known to plaintiff nor is there any of record
in Twin Falls County, Idaho, against which plaintiff can
have execution issued to satisfy his said judgments''; that

the defendant, Central Realty Company, "is not the owner of said described property but took the property subject to the rights of the said Jack France in said property, which said rights had by the said Jack France been sold and conveyed to the defendant, Twin Falls Feeder Company, and that the said Twin Falls Feeder Company now has 'an interest' in said property and is in the actual use and enjoyment of said real property and of the live stock feeding equipment located thereon, and is now the beneficial owner of said property." Respondent's judgments and futile levies were also plead. The main prayer for relief was "That a decree issue out of this Court, directing the Sheriff of Twin Falls County, Idaho, to levy upon and sell as the property of defendant Twin Falls Feeder Company, the real property heretofore described and enjoining the defendant, Central Realty Company, from in any manner interfering with the execution of said Writ and the satisfaction of said judgments." Appellant alone answered; and, upon issue joined, trial was had, a jury returning answers to submitted interrogatories. Adopting those of the jury, the court made the following findings:

"1. That the defendant Central Realty Company, prior to the completion of the transaction by which title to the property in question passed in its hands, knew that the plaintiff, Charles E. Simpson, had a claim against the defendant Twin Falls Feeder Company.

"2. That the defendant Central Realty Company paid the taxes against said property in January, 1929.

"3. That the defendant Central Realty Company paid to Matt Schmidt the final $2000.00 and interest due him under the Kingsbury and Hicks contract of sale to Jack France.

"4. That the defendant Twin Falls Feeder Company failed to cause its interest in the land in question to become a matter of public record for the purpose of concealing the fact that it owned an interest in said land.

"5. That said concealment was for the purpose of delaying its creditors in the collection of their debts.

"6. That the deed from Matt Schmidt to the Central Realty Company of the land used as a feed-lot by the Twin Falls Feeder Company was not made in good faith on the part of the defendant Central Realty Company.

"7. That the defendant Twin Falls Feeder Company has practiced secrecy regarding ownership of land in Twin Falls County from the date of its organization down to the time suit was brought against it by S. R. Johnson."

From these findings, the court concluded that the real owner of the property described was the defendant, Twin Falls Feeder Company; that the deed from Schmidt to defendant and appellant, Central Realty Company, was made with intent to delay and defraud creditors of the defendant, Twin Falls Feeder Company and was void "as against the judgments held by plaintiff"; that the liens thereof were prior in right to the claims of appellant Central Realty Company; that the interest of defendant, Twin Falls Feeder Company, in said property was subject to plaintiff's executions and that he should have judgment accordingly. Judgment was entered, the description therein of the land being identical with that set forth in the complaint, save the qualifying limitation of "an interest" therein: appeal followed.

Appellant's most serious complaint is that the court erred in declaring the conveyance from Schmidt to appellant void for fraud and defendant, Twin Falls Feeder Company, the real owner of the property conveyed. A careful study both of the pleadings and the findings discloses that respondent's attack and the facts found by the court were directed solely to the one conveyance. The record is confusingly crowded with a mass of facts occurring subsequent to the transaction, from which serious fraud might be inferred, but the complaint and the findings are silent in regard thereto. We can deal only with the facts found. The major part of respondent's brief is devoted to matters never plead nor even referred to in the findings.

It is difficult to perceive upon what theory the court concluded that the deed from Schmidt to appellant

was in anywise fraudulent, much less void. To constitute a conveyance fraudulent against a creditor, the instrument must operate to divest the debtor of something that might be subjected to the creditor's claim. (12 Cal. Jur. 976; 27 C. J. 418.) It is not questioned that Schmidt acquired good title to the Wolfgang-Kingsbury-Hicks contract and the Kingsbury-Hicks-France contract. It is not questioned that he secured from Wolfgang and his wife the title to the entire property, save and except the equity of defendant, Twin Falls Feeder Company, under its contract with France. He owed respondent no debt and had the freeman's right to dispose of his own property to anyone whomsoever. At no time did he ever attempt to convey any interest of defendant, Twin Falls Feeder Company. On the contrary, he expressly refused to convey that interest. Such a conveyance cannot be considered fraudulent. (*Schnittger v. Old Home Cons. Min. Co.*, 144 Cal. 603, 78 Pac. 9.)

Appellant bought just what its grantor had, no more and no less, and paid for it, according to the findings, at least $2,000. The court found that appellant paid certain taxes on the property but did not specify either the amount or to whom paid. The undisputed evidence shows that appellant paid Schmidt as part consideration $665 taxes on this particular property. And there is no finding that the moneys paid were not its own, certainly no finding that they were those of defendant Feeder Company. The deed having carried nothing but what Schmidt owned, how could the interest conveyed be subject to the claim of another's creditor? Clearly, all that respondent can contend for is to reach the equity of his debtor, Twin Falls Feeder Company. Appellant and the Feeder Company are distinct entities. The court did not find that any relation of trust or agency existed between them. Had an officer of the Feeder Company bought the company's obligation under the France contract, no other creditor could have complained of its enforcement. (*Martin v. Chambers*, 214 Fed. 769.) How, then, can appellant, a distinctly separate corpora-

tion, have had a less right?. The holding that the Matt Schmidt deed was void as against respondent's judgments was erroneous.

Since respondent in his brief declares that the purpose of his suit was "to have the deed set aside," his suit might well end here. However, having plead a right to subject to his judgments "an interest" in the property involved, and having prayed for a sale thereof, his pleadings were broad enough to warrant a judgment ordering that interest to be so subjected. But the definite interest was never by the pleadings specified or by the court found. Whatever equity defendant Feeder Company had in the property at the time of the judgment is still indeterminate and incapable of being segregated from that of appellant. The Feeder Company's equity is not superior to the fee simple appellant bought from Schmidt outright. As far as the pleadings and the findings are concerned, the Feeder Company's right to complete the France contract has not been forfeited. On the other hand, said company now may have no interest in the property at all. The cause is therefore reversed and remanded with instructions to the trial court to determine what interest, if any, the company has in the property, and, as to that interest, direct a subrogation in favor of respondent.

Costs to appellant.

Givens, Varian and McNaughton, JJ., concur.